Filed 8/19/14

CERTIFIED FOR PUBLICATION

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

# FOURTH APPELLATE DISTRICT

# DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E057059 |
| v. | (Super.Ct.No. FWV1200490) |
| JOSE CESAR SANCHEZ, | O P I N I O N |
| Defendant and Appellant. | |

APPEAL from the Superior Court of San Bernardino County.  Shahla Sabet, Judge.  Affirmed.

David R. Greifinger, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Julie L. Garland, Assistant Attorney General, and Peter Quon, Jr. and Raquel M. Gonzalez, Deputy Attorneys General, for Plaintiff and Respondent.

1

# I.  INTRODUCTION

A jury convicted defendant and appellant Jose Cesar Sanchez of grand theft of copper wire.  (Pen. Code, § 487, subd. (a).)  He was sentenced to three years in county jail.  On appeal, defendant contends that four statements made by the prosecutor during closing argument deprived him of his constitutional rights to due process and a fair trial in two respects.  First, the prosecutor committed *Griffin*[1] error by implicating defendant's failure to testify.  Second, the prosecutor made inflammatory statements about defendant and the jurors.  We hold that one comment constituted *Griffin* error and another amounted to prosecutorial misconduct.  We conclude, however, that the errors, individually and cumulatively, are harmless.  We therefore affirm the judgment.

# II.  FACTUAL BACKGROUND

Around 3:00 a.m. on February 28, 2012, two Southern California Edison (SCE) employees drove to an SCE service center.  The center, or yard, is surrounded by a brick wall topped with barbed wire; entry requires an electronic key card.  As they pulled into the yard, one of the employees saw a person underneath a truck.  The employee called the police.

Police officers arrived and found defendant in the wheel well of a truck.  An officer ordered defendant to come out.  When defendant did not comply, the officer tased him, pulled him out, and arrested him.  Inside the wheel well there were rolls of tape and a walkie-talkie.

---

[1]  *Griffin v. California* (1965) 380 U.S. 609 (*Griffin*).

The police officers found a large extension ladder propped up against the north wall of the distribution yard. A backpack containing pliers and miscellaneous hand tools was found near the truck. Spools of SCE's wire were on the ground, along with wire cutters; a milk crate holding drills and an impact wrench was found in the middle of the yard. According to one of the SCE employees, the location of the ladder and the items found on the ground was unusual and would violate SCE's rules.

Police officers located a GMC Yukon at a restaurant parking lot about a block away from the SCE yard. The vehicle had been last registered in defendant's name in 2010. Jasmine Rodriguez was in the driver's seat. Rodriguez consented to a search of the vehicle. The search turned up a notebook with the word "Cash" written on it and containing addresses of several SCE yards, including the yard in which defendant was found. A walkie-talkie found in the vehicle connected directly to the walkie-talkie found inside the SCE truck wheel well. Inside the Yukon there were also several tools, black tape, a dolly, and a ceramic insulator of the kind used on power poles.

A surveillance videotape of the SCE distribution yard revealed two figures climbing in and out of SCE trucks and taking items off the trucks during the two hours preceding defendant's apprehension. The videotape also showed a person walking toward the south end of the yard—the same area in which defendant was found—at 3:03 a.m. Less than two minutes later, the two SCE employees who found defendant pulled into the yard.

3

The copper wire found lying on the ground was about 3,125 feet long. The total value of the wire was $4,185. If the wire was deemed scrap, it would be worth $1,366.

## III. THE PROSECUTOR'S COMMENTS DURING CLOSING ARGUMENT

At trial, defendant did not testify and did not present any defense witnesses.

At the conclusion of rebuttal argument, the prosecutor stated: "Ladies and gentlemen, ultimately the thing to remember is that defense attorneys don't get up here and say, 'You know what, ladies and gentlemen, the evidence is just damning. My guy is guilty. Find him guilty. Thank you, I'm done.' [¶] They don't do that. They get up here and they work with what they have. And the reality is that this is not a good case for the defense so they get up here and argue whatever they can. *If the defense had a plausible, reasonable explanation why the defendant was in the yard that morning, they would have given it. They haven't.* [¶] [Defense counsel] is a talented attorney, skilled attorney. *And if she had a reasonable, plausible explanation for the defendant's presence in that yard at 3:00 in the morning she would have given it.* She hasn't because . . . ." (Italics added.) At this point, defense counsel objected to these statements as *Griffin* error. The court took the matter under submission.

The prosecutor continued: "I would submit to you ultimately the defense's argument is about hope. It's about hope that one of you—and just one of you, that's all they need—just one of you, will be *gullible enough* to think that the defendant just happened to be in that Edison yard at 3:00 in the morning . . . . Hope that one of you, just one of you will be *naïve enough* to believe that this was some kind of inside job. Hope

4

that one of you, just one of you, will be *hoodwinked* by the idea that [the two SCE employees] came in here and lied about how the yards are kept at Southern California Edison. Hope that one of you, just one of you, will be *gullible enough* to be bought by one of these ridiculous arguments. Hope that one of you will be *naïve enough* to think that any of this amounts to reasonable doubt. [¶] Why? So that the *defendant can go home and have a good laugh at your expense.*" (Italics added.)

Defense counsel objected to these statements as "[i]mproper." In the presence of the jury, the court instructed the prosecution "not [to] influence the jurors by calling them names, basically, naïve or gullible if they did something you don't like."

The prosecutor concluded his argument by stating: "Ladies and gentlemen, as we sit here today, the *defendant is still in that wheel well in a very real sense, and this time he's hiding from all of you. . . . Pull him out of that wheel well one last time.* Thank you." (Italics added) Defense counsel did not object to this statement. Despite the lack of objection, the court addressed some of these statements outside the presence of the jury.

Although the court had been "vigilantly listening," it "did not see or hear any *Griffin* error." However, the court reminded the prosecutor that he is held to "high, high ethical standards," and told the prosecutor there were a couple of times when he "got very close to the line." In particular, the court pointed to the prosecutor's statement that defendant is: "[S]till hiding in this barrel [*sic*]. You repeated your theme . . . that he never acknowledged his guilt so he's still hiding, he doesn't acknowledge his guilt." The

5

prosecutor was reminded to "stay away from those arguments because it's going to be appealed. It's going to be a huge issue."

## IV. STANDARD OF REVIEW

We evaluate claims of *Griffin* error by inquiring whether there is "a reasonable likelihood that any of the [prosecutor's] comments could have been understood, within its context, to refer to defendant's failure to testify." (*People v. Clair* (1992) 2 Cal.4th 629, 663.) The standard for evaluating claims of prosecutorial misconduct is well established and summarized as follows: "A prosecutor's conduct violates the Fourteenth Amendment to the federal Constitution when it infects the trial with such unfairness as to make the conviction a denial of due process. Conduct by a prosecutor that does not render a criminal trial fundamentally unfair is prosecutorial misconduct under [California] law only if it involves the use of deceptive or reprehensible methods to attempt to persuade either the trial court or the jury. Furthermore, . . . when the claim focuses upon comments made by the prosecutor before the jury, the question is whether there is a *reasonable likelihood* that the jury construed or applied any of the complained-of remarks in an objectionable fashion." (*People v. Morales* (2001) 25 Cal.4th 34, 44, italics added.)

## V. DISCUSSION

A. *Griffin Error*

Defendant argues the prosecutor implicated defendant's failure to testify by arguing that if the defense had a plausible, reasonable explanation for defendant's

6

presence in the SCE yard, it would have given one, and it had not. Defendant further argues that the prosecutor compounded the *Griffin* error by telling the jurors that defendant was "still in that wheel well in a very real sense, . . . hiding from all of you," and that the jury should "[p]ull him out of that wheel well one last time."

1. Applicable Law

In *Griffin*, the United States Supreme Court held that "the Fifth Amendment . . . forbids . . . comment by the prosecution on the accused's silence . . . ." (*Griffin, supra,* 380 U.S. at p. 615, fn. omitted.) The *Griffin* rule has been extended to prohibit a prosecutor from commenting, either directly or indirectly, on the defendant's failure to testify. (*People v. Medina* (1995) 11 Cal.4th 694, 755; see *U.S. v. Robinson* (1988) 485 U.S. 25, 32 [*Griffin* prohibits "'prosecutor from suggesting to the jury that it may treat the defendant's silence as substantive evidence of guilt.'"].) However, this rule does not preclude a prosecutor's comments on the state of the evidence, or on the failure of the defense to introduce material evidence or to call logical witnesses. (*People v. Hovey* (1988) 44 Cal.3d 543, 572.)

As both parties acknowledge, a prosecutor may commit *Griffin* error if he or she argues to the jury that certain testimony or evidence is uncontradicted when the nontestifying defendant is the only person who can refute the evidence. (*People v. Johnson* (1992) 3 Cal.4th 1183, 1229.) "If, however, the evidence could have been contradicted by witnesses other than the defendant, the prosecutor may without violating

7

defendant's [Fifth Amendment right] describe the evidence as 'unrefuted' or 'uncontradicted.'" (*Ibid.*)

2. Analysis

We first consider the prosecutor's comment: "If the defense had a plausible, reasonable explanation why the defendant was in that yard that morning, they would have given it. They haven't." We conclude this statement did not constitute *Griffin* error.

Preliminarily, the People argue that defendant forfeited any claim regarding this statement because he failed to object when it was made. It is true that "[w]hen a defendant believes the prosecutor has made remarks constituting misconduct during argument, he or she is obliged to call them to the court's attention by a timely objection . . . [to] preserve[] [the claim] for appeal." (*People v. Morales, supra,* 25 Cal.4th at pp. 43-44.) However, it is also true that a reviewing court may, in its discretion, decide to review a claim that has been or may be forfeited for failure to raise the issue below. (*In re Sheena K.* (2007) 40 Cal.4th 875, 887, fn. 7; see also Pen. Code, § 1259 [an "appellate court may, without exception having been taken in the trial court, review any question of law involved . . . at the trial . . . which affected the substantial rights of the defendant."].) Here, because a Fifth Amendment violation may affect defendant's "substantial rights," we will exercise discretion in this case to address the merits of the claim.

The most recent California Supreme Court case reviewing similar *Griffin* error claims is *People v. Thomas* (2012) 54 Cal.4th 908. In *Thomas*, the defendant was convicted of first degree murder, among other crimes. (*Id*. at p. 914.) During the

8

defendant's penalty phase closing argument, the prosecutor commented that "'[n]ot one person came forward' to say defendant 'couldn't have done it, he was with me.'" (*Id.* at p. 945.) The court stated the rule that "'a prosecutor may commit *Griffin* error if he or she argues to the jury that certain testimony or evidence is uncontradicted, if such contradiction or denial could be provided *only* by the defendant, who therefore would be required to take the witness stand.'" (*Ibid.*) The court concluded that the prosecutor had not violated this rule because the "comments were framed in terms of the failure to call some person *other than defendant* who would testify that defendant 'was with me.'" (*Ibid.*)

Two other cases are also instructive: *People v. Johnson, supra*, 3 Cal.4th 1183 and *People v. Bradford* (1997) 15 Cal.4th 1229. In *Johnson*, the defendant was charged with murder, attempted murder, robbery, and burglary. The defense was misidentification. (*People v. Johnson, supra,* at p. 1209.) At trial, the defense challenged the victim's identification testimony, "implicitly contending that defendant was elsewhere . . . on the night of the crime." (*Id.* at p. 1229.) However, the defense presented no alibi evidence to support this argument. (*Ibid.*) During closing argument, the prosecutor argued that the fact the defendant was at the scene of the crime, killed one victim, and shot another victim was "uncontradicted." (*Ibid.*) The Supreme Court held there was no *Griffin* error because the prosecutor's comments merely reflected the state of the evidence. (*People v. Johnson, supra,* at p. 1229.)

9

In *Bradford*, the defendant was found guilty of two counts of first degree murder. (*People v. Bradford, supra,* 15 Cal.4th at pp. 1261-1262.)  During closing argument, the prosecution stated that "the defense had not called a single witness, nor produced a single piece of evidence pointing to the defendant's innocence." (*Id.* at p. 1338.)  The prosecution also argued that the victims had been killed for pleasure and there was "'no evidence to the contrary.'" (*Ibid.*)  The court held no *Griffin* error had been committed because "[t]he prosecutor did not allude to the lack of refutation or denial by the sole remaining witness, defendant, but rather to the lack of *evidence*, which might have been presented in the form of physical evidence or testimony other than that of defendant." (*People v. Bradford, supra,* at p. 1340.)

In each of these cases, our state Supreme Court indicated, expressly or impliedly, that the challenged comments would have constituted *Griffin* error if defendant was the only witness who could have been called to refute alleged uncontradicted evidence.  If, however, other evidence could have been produced to refute the uncontradicted evidence, no *Griffin* error is committed.

Here, defendant argues that he was the only plausible witness who could testify as to why he was in the SCE yard that morning and the prosecutor, by commenting on his failure to offer any such witnesses, improperly focused the jury on defendant's failure to testify.  We disagree.

A "logical witness" for explaining defendant's presence in the SCE yard was Rodriguez—the woman in the Yukon.  (See *People v. Hovey, supra,* 44 Cal.3d at p. 572.)

10

At the time of defendant's apprehension, Rodriguez was sitting in the Yukon about a block away from the SCE yard. The vehicle had been previously registered to defendant. There were numerous items inside the Yukon indicating that Rodriguez's presence in the Yukon and defendant's presence in the nearby SCE yard at 3:00 in the morning was not mere coincidence or happenstance. There was a walkie-talkie in the Yukon that directly connected to a walkie-talkie found inside the wheel well where defendant was found.

From all of this evidence, the jury could have reasonably concluded that both defendant and Rodriguez had gone to the area near the SCE yard with a common goal and that Rodriguez could explain defendant's presence in the yard. The defense, however, did not call Rodriguez to testify. Under these circumstances, the prosecution's statements reasonably allude, not to defendant's failure to testify, but to the defense's failure to call Rodriguez or introduce any other evidence that could explain why defendant was in the SCE yard at 3:00 in the morning. The prosecutor's comment, therefore, did not constitute *Griffin* error.

Defendant responds that his principal defense was not to excuse his presence in the yard, but rather that the prosecution failed to prove that he either possessed or moved the wire. Thus, he argues, Rodriguez could not have testified as to the "possession or moved" requirement for larceny because she was not in the yard with defendant. Defendant's argument is misplaced. Regardless of defendant's principal defense, the challenged comment refers to the defense's failure to offer evidence to explain defendant's presence in the SCE yard. The issue is whether it is reasonably likely that

11

the jurors understood the statement to refer to defendant's failure to testify; as we have explained, it is not. The fact that defendant's principal defense was focused on a different issue has no bearing on the question presented.

We now turn to the second comment—"the defendant is still in that wheel well in a very real sense, and this time he's hiding from all of you." Initially, we observe that the prosecutor, despite referring to "a very real sense," was speaking metaphorically; defendant was, after all, in the courtroom throughout the trial. The most reasonable interpretation of the comment is that defendant was "hiding" from the jury in a figurative sense by not testifying; he was hiding because he refused to get on the stand and tell the jury why he was in the SCE yard the night of the incident. The Attorney General has not offered an alternative interpretation of the comment.

Significantly, the prosecutor identified "the defendant" as the person who was hiding. The focus on defendant in this case contrasts with the prosecutors' comments in *Thomas*, *Johnson*, and *Bradford*, which were centered on the *defense's case as a whole*. In *Thomas*, the prosecutor commented on how the defendant had not brought forward any witnesses, alluding to a failure to present evidence from witnesses other than the defendant. (*People v. Thomas, supra,* 54 Cal.4th at p. 945.) In *Johnson*, the prosecutor's comment that the evidence was "uncontradicted" alluded to a failure to present alibi evidence to contradict prosecution evidence that the defendant was present at the scene of the crime. (*People v. Johnson, supra,* 3 Cal.4th at p. 1229.) Finally, in *Bradford*, the prosecutor commented on the lack of defense evidence generally, as well as more

12

particularized comments on certain issues, all of which alluded to evidence that could have been presented from sources other than the defendant. (*People v. Bradford, supra,* 15 Cal.4th at pp. 1339-1340.) Here, the prosecution specifically referenced *the defendant*, as opposed to defendant's *defense* or *case*, by stating that *the defendant* was "hiding from all of you."[2]

Because the prosecutor explicitly referred to defendant's actions, there is a reasonable likelihood that a jury would construe or apply the prosecution's statement to mean that defendant refused to testify in front of the jury. The prosecution compounded this effect by asking the jury to "[p]ull him out of that wheel well one last time." The statement, therefore, constituted *Griffin* error.

B. *Prosecutorial Misconduct*

Defendant next argues the prosecutor committed prosecutorial misconduct by arguing that defendant hoped that at least one of the jurors would be "gullible," "naïve," and "hoodwinked" into believing defendant's arguments, and that defendant would then have a good laugh at the jury's expense. Defendant further argues that the prosecutor compounded the misconduct by asking the jury to pull the defendant "out of that wheel well." We agree.

---

**2** Here, the trial court correctly recognized a possibility of *Griffin* error by stating: "Actually, the place it got closer to [a *Griffin* error] was your very closing when you said he's still hiding in this barrel [*sic*]. You repeated your theme . . . that he never acknowledged his guilt so he's still hiding, he doesn't acknowledge his guilt. He has a right to a trial." The trial court reminded the prosecutor that "the jury can get confused. It can be . . . misinterpreted. A [prosecutor] has such high, high ethical standards. You should stay away from that."

13

1. Applicable Law

"'A prosecutor's conduct violates a defendant's constitutional rights when the behavior comprises a pattern of conduct so egregious that it infects "'the trial with unfairness as to make the resulting conviction a denial of due process.'"'" (*People v. Hamilton* (2009) 45 Cal.4th 863, 920.) Even if the behavior does not reach that level of egregiousness, it may still violate California law if it involves the "'use of "deceptive or reprehensible methods" when attempting to persuade either the trial court or the jury, and it is reasonably probable that without such misconduct, an outcome more favorable to the defendant would have resulted.'" (*People v. Dykes* (2009) 46 Cal.4th 731, 760.) "The focus of the inquiry is on the effect of the prosecutor's action on the defendant, not on the intent or bad faith of the prosecutor." (*People v. Hamilton*, *supra*, at p. 920.)

Our state Supreme Court reminds us that "[i]t is the duty of every member of the bar to 'maintain the respect due to the courts' and to 'abstain from all offensive personality.'" (*People v. Espinoza* (1992) 3 Cal.4th 806, 819-820, quoting Bus. & Prof. Code, § 6068, subds. (b), (f).) However, prosecutors "are held to an elevated standard of conduct." (*People v. Hill* (1998) 17 Cal.4th 800, 819, overruled on other grounds in *Price v. Superior Court* (2001) 25 Cal.4th 1046, 1069, fn. 13.) Prosecutors are held to a standard higher than that imposed on other attorneys because of the unique function they perform in representing the interests, and in exercising the sovereign power, of the state.

In *Berger v. United States* (1935) 295 U.S. 78, the Supreme Court described the role of a prosecutor: "The United States Attorney is the representative not of an ordinary

14

party to a controversy, but of a sovereignty whose obligation to govern impartially is as compelling as its obligation to govern at all; and whose interest, therefore, in a criminal prosecution is not that it shall win a case, but that justice shall be done. . . . He may prosecute with earnestness and vigor—indeed, he should do so.  But, while he may strike hard blows, he is not at liberty to strike foul ones.  It is as much his duty to refrain from improper methods calculated to produce a wrongful conviction as it is to use every legitimate means to bring about a just one." (*Id*. at p. 88.)

Thus, when prosecutors engage in jury intimidation instead of relying on the evidence presented, they strike a "foul blow" and take advantage of their unique function by "greatly demean[ing] the office they hold and the People in whose name they serve." (*People v. Espinoza, supra,* 3 Cal.4th at p. 820.)

Within the scope of permissible prosecutorial argument, a prosecutor is given wide latitude during argument """"as long as it amounts to fair comment on the evidence, which can include reasonable inferences, or deductions to be drawn therefrom. . . .""" (*People v. Stanley* (2006) 39 Cal.4th 913, 951.)  However, it is prosecutorial misconduct to "'make arguments to the jury that give [the jury] the impression that "emotion may reign over reason," and to present ". . . inflammatory rhetoric that diverts the jury's attention from its proper role, or invites an irrational, purely subjective response." [Citation.]'" (*People v. Redd* (2010) 48 Cal.4th 691, 742; see also *People v. Fuiava* (2012) 53 Cal.4th 622, 693.)

15

2. <u>Analysis</u>

Defendant contends the prosecutor committed misconduct when he argued that defendant hopes that "one of you" will be "gullible enough," "naïve enough," and "hoodwinked" by the defense arguments so that he "can go home and have a good laugh at your expense." The trial judge recognized the misconduct and reminded the prosecutor to "not influence the jurors by calling them names, basically, naïve or gullible if they did something you don't like." We agree with defendant. The prosecutor's comments fell outside the bounds of the "wide latitude" given to prosecutors during argument because the comments were designed to offend and intimidate the potential holdout juror who doubted defendant's guilt.

In *People v. Gainer* (1977) 19 Cal.3d 835 (*Gainer*), disapproved on another point in *People v. Valdez* (2012) 55 Cal.4th 82, 163, the defendant was tried for murder. On the third day of deliberation, and after the jury requested to have testimony reread several times, the jury foreman indicated they were having difficulty reaching a verdict. (*Gainer, supra,* at p. 840.) The trial judge inquired as to the numerical count of the panel and the foreman replied, "'Eleven to one.'" (*Ibid*.) At this point, the trial judge instructed the jury: "'Although the verdict to which a juror agrees must, of course, be his own verdict . . . you must examine the questions submitted to you with candor and with a proper regard and deference to the opinions of each other. You should consider that the case must at some time be decided . . . . [¶] [I]f in any part of [the case] you are left in doubt, the defendant is entitled to the benefit of the doubt and must be acquitted. But in

16

conferring together, you ought to pay proper respect to each other's opinions and listen with a disposition to be convinced to each other's argument.'" (*Id.* at p. 841).

The trial judge then gave the jurors two scenarios: "'[I]f much the larger of your panel are for a conviction, a dissenting juror should consider whether a doubt in his or her own mind is a reasonable one . . . . [¶] And, on the other hand, if a majority are for acquittal, the minority ought seriously to ask themselves whether they may not reasonably and ought not to doubt the correctness of a judgment . . . .'" (*Gainer*, *supra*, 19 Cal.3d at 841.) After further deliberations, the jury returned a verdict of guilty. (*Id.* at p. 842.)

On appeal, our state Supreme Court held that the trial judge's instruction was improper because it instructed the jury to consider extraneous and improper factors, inaccurately stated the law, and carried a potentially coercive impact. (*Gainer, supra,* 19 Cal.3d at pp. 842-843.) The court stated that the charge to the minority or dissenting jurors implicated two important principles. The first is that "'"the conclusions to be reached in a case will be induced only by evidence and argument in open court . . . ."' [Citations.]" (*Id.* at pp. 847-848.) The second "relates to the right of both the People and the defendant to the individual judgment of each juror on the issue of guilt." (*Id.* at p. 848.)

The court then explained that "in instructing that 'a dissenting juror should consider whether a doubt in his or her own mind is a reasonable one, which makes no impression on the minds of so many men or women equally honest, equally intelligent

with himself or herself,' the trial judge pointedly directs the jurors to include an extraneous factor in their deliberations, i.e., the position of the majority of jurors at the moment. The one or more 'holdout' jurors are told that in reaching their independent conclusions as to whether or not a reasonable doubt of the defendant's guilt exists, they are to weigh not only the arguments and evidence but also their own status as dissenters—a consideration both rationally and legally irrelevant to the issue of guilt. They are thus deflected from their proper role as triers of fact, as effectively as if they had been instructed to consider their doubts as to guilt in light of their own prejudices or desire to go home." (*Gainer, supra,* 19 Cal.3d at p. 848, fn. omitted.)

The *Gainer* court stated further that the "instruction interferes with the jury's task in a way which threatens the defendant's right under the California Constitution to have his guilt or innocence determined by the unanimous verdict of a jury of 12 persons. [Citations.] 'Unanimity obviously requires that each juror must vote for and acquiesce in the verdict. Acquiescence simply because the verdict has been reached by the majority is not an independent judgment, and if permitted, would undermine the right to a unanimous verdict.' [Citation.] The open encouragement given by the charge to such acquiescence [in the majority's decision] is manifestly incompatible with the requirement of independently achieved jury unanimity." (*Gainer, supra,* 19 Cal.3d at pp. 848-849.)

In *Gainer,* the improper comments in those cases were made by a trial judge, not the prosecutor, as in this case. However, the principles and concerns expressed in *Gainer*

18

are applicable here.[3] Significantly, the prosecutor repeatedly stated that defendant hopes that "one of you"—a phrase uttered 10 times in five sentences—would be gullible, naïve, and hoodwinked. By focusing on "one of you," the prosecutor's comments were directed at any juror who might consider being a lone holdout for acquittal. The prosecutor planted the idea that anyone who accepted the defense attorney's "ridiculous arguments" would be a sucker who could be easily manipulated, or "hoodwinked." If the prosecutor's comments had the desired effect, they created a risk that a juror would decide the case not based on the evidence or the law, but rather find defendant guilty to avoid being viewed as gullible, naïve, or hoodwinked.

We can easily imagine the jury room in which 11 jurors favor guilt and one is undecided, as was the case in *Gainer*. In addition to the evidence and the court's instructions, the 11 would be verbally armed with the prosecutor's weighty accusations of gullibility and naiveté to pressure the holdout. The lone doubter might easily give in to such pressure despite harboring reasonable doubt of defendant's guilt. The result is a juror not participating in the legal system as an independent fact finder in order to avoid appearing gullible and naïve. Such extraneous considerations are, like the instruction disapproved in *Gainer*, "rationally and legally irrelevant to the issue of guilt." (*Gainer, supra,* 19 Cal.3d at p. 848, fn. omitted.) By encouraging a holdout's acquiescence in the majority's view based on such considerations, the statements also undermine the

---

[3] Although the improper comments in *Gainer* were made by a trial judge, not the prosecutor, the court has indicated that the same principles apply to prosecutors. (See *People v. Boyette* (2002) 29 Cal.4th 381, 436.)

defendant's right to the individual judgment of each juror and unanimous verdict. (See *id.* at pp. 848-849.)

Additionally, we find the prosecutor's statement that "defendant can *go home and have a good laugh at your expense*" independently inappropriate. (Italics added.) The comment suggests that if one of the jurors votes not guilty, defendant will go free, or "go home." The guilty-or-go-home choice presented to the jurors, however, is inaccurate. A trial may result in a hung jury. That is, if there are 11 jurors who believe defendant is guilty and the twelfth juror votes not guilty, defendant may remain incarcerated at least until the case is retried. Thus, there are three possible outcomes for defendant: defendant is found not guilty and gets to go home, defendant is found guilty and presumably does not go home, or the jury is hung and, depending upon subsequent events, defendant *might* go home. It was improper to suggest or imply that if "just one" of the jurors believed defendant not guilty, that defendant would necessarily go free. The comment that defendant would also have a good laugh at the juror's expense compounds that error by intimidating any juror who does not want to be viewed as a fool.

The statement that defendant is going to go home and laugh at the jurors at their expense is also unsupported by facts in evidence. In *People v. Edelbacher* (1989) 47 Cal.3d 983, the prosecutor "attacked [the defendant's] character by referring to him as a 'contract killer,' a 'snake in the jungle,' 'slick,' 'tricky,' a 'pathological liar,' and 'one of the greatest liars in the history of Fresno County.'" (*Id.* at p. 1030.) The court held that this comment amounted to fair argument because "[r]eferring to the testimony and out-of-

20

court statements of a defendant as 'lies' is an acceptable practice so long as the prosecutor argues inferences based on evidence rather than the prosecutor's personal belief resulting from personal experience or from evidence outside the record." (*Ibid*.) In that case, "[t]he prosecutor's comments were based on the evidence . . . ." (*Ibid*.)

Unlike the comment in *Edelbacher*, the prosecutor's comment here does not refer to facts in evidence, but is based on speculation or the prosecutor's personal belief about defendant's character. By stating that defendant is going to "go home and laugh at your expense," the prosecutor is implying that defendant is a person who would hoodwink the jurors into believing he is innocent and then laugh at them for doing so. There was, however, no evidence as to defendant's character.

If defendant indicated by some behavior in court that he was the kind of person who would go home and laugh at the jurors, it would have been misconduct to refer to such behavior in his argument. "Consideration of the defendant's behavior or demeanor while off the stand violates the rule that criminal conduct cannot be inferred from bad character." (*People v. Heishman* (1988) 45 Cal.3d 147, 197; see also *People v. Garcia* (1984) 160 Cal.App.3d 82, 92 ["[T]he nontestimonial behavior of a defendant while in the courtroom cannot be [used] as evidence of his guilt."].) The misconduct is even clearer if the prosecutor's comment was based solely on speculation as to how defendant would behave if he was acquitted. Finally, we note that the prosecutor's improper comments were made at the conclusion of his rebuttal argument. As such, defense counsel had no opportunity to respond, and the words were the last the jurors heard

21

before deliberating. Therefore, we hold that this statement independently constitutes prosecutorial misconduct.

The Attorney General contends that when viewed in context, the prosecutor's rebuttal argument simply focused the jury's attention on the testimony and evidence in the case. We disagree.

The statement of "that's all they need—just one of you, will be *gullible enough* to think that the defendant just happened to be in that Edison yard" cannot be interpreted to be a fair comment on the evidence presented. (Italics added.) The statement that " just one of you, will be *hoodwinked* by the idea that [two of the prosecution's witnesses] came in here and lied" cannot be interpreted to be a fair comment on the evidence presented. (Italics added.) Further, the statement that "one of you will be *naïve* enough to think that any of this amounts to reasonable doubt" cannot be interpreted to be a fair comment on the evidence presented. (Italics added.) Neither can the comment that "defendant [will] go home and have a *good laugh at your expense*" be interpreted to be a fair comment on the evidence presented. (Italics added.) None of these statements focused the jurors' attention on the testimony or evidence in the case. Rather, they were made to intimidate any juror who believed defendant's defense and did not want to be viewed as gullible, naïve, hoodwinked, or laughed at. The statements could have had a chilling effect on the jury's deliberative process.

The People argue that the prosecutor's comments resemble the comments permitted by the court in *People v. Cunningham* (2001) 25 Cal.4th 926. We reject this

argument.  In *Cunningham*, the prosecutor was permitted to tell the jury that defense counsel's "'job is to create straw men.  Their job is to put up smoke, red herrings . . . [a]nd [the prosecutor's] job is to straighten that out and show [the jury] where the truth lies.'"  (*Id.* at pp. 1002-1003.)

Similarly here, the prosecutor stated:  "[T]he thing to remember is that defense attorneys don't get up here and say, 'You know what, ladies and gentlemen, the evidence is just damning. . . .'  [¶]  They don't do that.  They get up here and they work with what they have.  And the reality is that this is not a good case for the defense so they get up here and argue whatever they can."  However, the prosecutor in this case took this approach one significant step further by arguing that the jurors would be hoodwinked, naïve, or gullible if they believed the defense arguments.  Unlike the comments in *Cunningham*, the comments in this case raised the far more serious risk of jury intimidation.  *Cunningham* is thus easily distinguished.

In our view, the comments addressed herein were not oratorical slips or the product of over-exuberance in the heat of battle.  Phrases such as "defendant is still in that wheel well . . . hiding from all of you" and "[p]ull him out of that wheel well one last time" are not the stuff of excited improvisation.  Indeed, the comments are well put together and, based on their content and placement near the end of the prosecutor's rebuttal, appear to have been carefully crafted and planned.

To summarize, we find two areas of misconduct:  (1) *Griffin* error based on the prosecutor's statement that defendant was hiding from the jury and (2) prosecutorial

23

misconduct based on the prosecutor's statement that the jury would need to be gullible, naïve, and hoodwinked to believe defendant, who would then go home and laugh at their expense.  We reject all other claims of error.

C.  *Harmless Error*

Next, we must determine the effect of the *Griffin* error and the prosecutorial misconduct.  Errors that rise to the level of federal constitutional error are prejudicial unless the state "prove[s] beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained."  (*Chapman v. California* (1967) 386 U.S. 18, 24.)  Errors under California law are prejudicial when "it is reasonably probably that a result more favorable to the appealing party would have been reached in the absence of the error."  (*People v. Watson* (1956) 46 Cal.2d 818, 836.)  It is clear that "'a "probability" in this context does not mean more likely than not, but merely a *reasonable chance*, more than an *abstract possibility*.'"  Further, the courts' interpretation of a "'result more favorable'" has "no significant distinction" from "the phrase[] 'a different result,'" as "[b]oth standards anticipate that the party seeking relief will be in a different, and necessarily a better, position if relief is granted."  (*People v. Soojian* (2010) 190 Cal.App.4th 491, 519-520.)  Thus, "[i]t appears that under the *Watson* standard a hung jury is considered a more favorable result than a guilty verdict."  (*Id.* at p. 520.)

Our state Supreme Court has repeatedly found the harmless error standards met when the evidence of guilt is so strong that the jury would have reached the same verdict regardless of the error.  (See *People v. Houston* (2012) 54 Cal.4th 1186, 1222 [holding

24

errors harmless under either *Chapman* or *Watson* "[g]iven the overwhelming evidence of defendant's guilt"]; *People v. Booker* (2011) 51 Cal.4th 141, 186 [holding that when "[v]iewing the prosecutor's statements in the context of his entire argument, the jury was properly informed about the prosecutor's burden, and the evidence of defendant's guilt (notably, his own confession) was overwhelming"]; *People v. Fields* (1983) 35 Cal.3d 329, 363 [holding that the misconduct of the prosecutor and even the erroneous ruling of the trial judge did not prejudice the defendant because "[t]he evidence of defendant's guilt of first degree murder was overwhelming"].)

Defendant relies on *People v. Mendoza* (1974) 37 Cal.App.3d 717. In that case, the defendant was convicted of lewd acts upon a minor. (*Id.* at p. 721.) In reversing the judgment, the Court of Appeal pointed to four errors by the prosecution. Not only did the prosecutor violate "the spirit of *Griffin* . . . with a thinly veiled comment on [the defendant's] failure to testify,"[4] she also drew unjustifiable inferences from the defendant's conduct, dwelt on suppositions not reflected in evidence, misstated the law, and improperly asked the jury "'to take [the defendant] off the streets.'" (*Id.* at pp. 726-727.) The court also compounded the *Griffin* error by giving a jury instruction that "indirectly implied that the jury could consider [the defendant's] failure to testify as evidence to prove an essential element of the offense." (*People v. Mendoza, supra,* at p.

---

[4] The offensive comment included the statements: "'Since olden days, I guess it is from the time when the defendant was not capable of taking the stand, you know, he couldn't be a witness in those days, there is a cautionary instruction that says to you, "The charge is easily made; hard to defend against."'" (*People v. Mendoza, supra*, 37 Cal.App.3d at p. 726.)

25

726.) The Court of Appeal concluded that the prosecutor's "strong[] appeal to passion and prejudice," "misstatements[,] and irrelevancies may have erroneously prejudiced the jury against the defendant." (*Id.* at p. 727.) As a result, the court was "not persuaded beyond a reasonable doubt that the cumulative impact of these errors had no effect in bringing about the guilty verdict." (*Ibid.*)

Here, the prosecution committed two errors: *Griffin* error by referring to the defendant still hiding in the wheel well, and prosecutorial misconduct by his comments directing jurors not to be gullible, naïve, or hoodwinked. The errors, while egregious, were isolated and not accompanied by misstatements of law or the strong appeals to passion and prejudice that were present in *Mendoza*. Moreover, the evidence of guilt in the present case is extremely strong.

We have viewed the surveillance videotape shown to the jury. The videotape shows movement within the SCE yard by two individuals between 1:00 and 3:00 in the morning; one individual is wearing a dark shirt, the other a light-colored shirt. The movement continues for some time in which it appears the two individuals were moving items on and off several trucks and pushing a large cart or dolly back and forth. One of the SCE employees testified at trial that many of the areas where the two individuals were seen moving contained stocked wire wheels. About an hour later, the individual with the light-colored shirt no longer appeared in the camera's view, but the individual in the dark shirt appeared to be climbing in and out of the bucket trucks. Eventually, a

26

person is seen walking towards the south end of the distribution yard in the same area where the two SCE employees found defendant in a truck's wheel well.

Defendant argues the videotape was unclear and blurry, and the figures moving were too small to positively identify either one as defendant. However, the videotape clearly showed two individuals who were not supposed to be in the yard at 1:00 in the morning, and that these individuals were moving items back and forth in the yard and on and off trucks, and that one of them was last seen in the south end of the yard where defendant was found minutes later. The videotape, combined with the testimony of the SCE employees who found defendant, is extremely strong evidence establishing that defendant was one of the individuals seen moving items in the yard.

Additionally, valuable copper wire was found near the area where defendant was arrested, along with miscellaneous tools, including wire cutters. Defendant was found with rolls of tape and a walkie-talkie inside the wheel well. Further, a truck registered in 2010 in defendant's name was found only a block from the SCE yard with a walkie-talkie connected to the one in the wheel well, and a notebook listing several SCE addresses, including the SCE yard where defendant was arrested. Therefore, in light of the strong evidence against defendant, we are convinced beyond a reasonable doubt that the jury would not have reached a different verdict absent the *Griffin* error.

Finally, we note that the trial judge ameliorated the effect of the error by admonishing the prosecutor, in front of the jury, to refrain from calling the jurors names.

27

Although the court did not ask the jury to disregard the prosecutor's statements, the admonishment lessened the prejudicial effect.

After reviewing the entire record, we are convinced that the errors committed by the prosecutor are harmless under either the *Chapman* or *Watson* standards.

While we hold both errors were harmless, we note the language in *People v. Lambert* (1975) 52 Cal.App.3d 905, which applies with equal force here: "Despite our conclusion that the misconduct here was nonprejudicial, we feel compelled to forewarn prosecutors that we have too often of late been faced with the task of determining whether unnecessarily zealous prosecutors have committed misconduct, and if so, determining whether, on the basis of the whole record, that misconduct was prejudicial. Frequently, it seems that deputy district attorneys see their sole function as winning cases even at the expense of a fair trial for the defendant and the proper administration of justice in the courts. . . .  [¶]  . . . [W]hile we are not inclined to find such conduct prejudicial if the record does not warrant such a conclusion, we feel compelled to warn prosecutors that they cannot continue with impunity to engage in such conduct thinking that appellate courts will save them by applying the harmless error rule. . . ." (*Id.* at pp. 911-912.)

## VI. DISPOSITION

The judgment is affirmed.

CERTIFIED FOR PUBLICATION

KING
Acting P. J.

We concur:

MILLER
J.

CODRINGTON
J.