Filed 4/13/15  P. v. Webb CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

**IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA**

**FOURTH APPELLATE DISTRICT**

**DIVISION TWO**


| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E061270 |
| v. | (Super.Ct.No. RIF1205143) |
| LOUIS FRANCISCO WEBB, | OPINION |
| Defendant and Appellant. | |


APPEAL from the Superior Court of Riverside County.  Irma Poole Asberry, Judge.  Affirmed.

Gerald J. Miller, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Julie L. Garland, Assistant Attorney General, Peter Quon, Jr., and Martin E. Doyle, Deputy Attorneys General, for Plaintiff and Respondent.

A jury convicted defendant and appellant Louis Francisco Webb[1] of felony battery causing serious bodily injury (Pen. Code[2], § 243, subd. (d)), felony making of terrorist threats (§ 422), and misdemeanor vandalism (§ 594, subd. (a)). Defendant admitted he had previously served four prison terms stemming from four prior felony convictions. (§ 667.5, subd. (b).) He was sentenced to an aggregate term of eight years eight months in state prison.[3]

Defendant moved for a mistrial on the ground that the prosecutor committed a *Griffin*[4] error by commenting on his decision not to testify during her closing argument. On appeal, he contends the court's denial of his motion constitutes prejudicial error. Because we find that no *Griffin* error occurred, we affirm the judgment.

FACTUAL AND PROCEDURAL BACKGROUND

The People charged defendant with six separate counts. The first three of these related to events that occurred on December 25, 2012, and the last three related to events

---

[1] Defendant uses this name but is also known as Steven Garcia because he has both a birth name and an adopted name. The trial court instructed the jury that it was not to draw any adverse inferences from the fact that witnesses may refer to defendant by two different names.

[2] Unless otherwise specified, all statutory references are to the Penal Code.

[3] This was comprised of the upper term of four years on the battery count and eight months on the terrorist threats count, with a one-year enhancement for each of the four prison priors. Defendant also received a concurrent four-month sentence for the vandalism count and credit for 973 days time served.

[4] *Griffin v. California* (1965) 380 U.S. 609 (*Griffin*).

2

that occurred on November 24, 2012. Because the November 24, 2012, incident is largely irrelevant to the issues presented on this appeal, we summarize it only briefly.

Defendant and the victim became acquaintances and then friends after defendant started living in a room in a mobilehome owned by the victim. Defendant paid rent at one time, but he stopped on a date the victim could not recall. On November 24, 2012, defendant threw a garden hoe at the victim. After the hoe glanced off of the victim's bicycle and struck the victim in the ankle, defendant attacked the bicycle with an axe and broke the frame. Defendant also threatened to beat and to kill the victim.

After the November 24, 2012 incident, the victim stayed with friends because, "They hadn't found [defendant] at the time." On December 25, 2012, the victim returned to the mobilehome with four friends, who were concerned about his well-being. Defendant was "aggravated," "upset," and "mad." He yelled and "made some threats." Although it did not hit anyone, defendant threw a piece of wood at the victim and his friends. The victim and his friends exited the property, and the victim called 911.

A deputy sheriff responded to the call and spoke to both defendant and the victim. The deputy concluded that defendant was an unwanted guest in the victim's residence and instructed defendant to leave the property. Defendant protested that he could not be forced to leave without an eviction notice, but the deputy disagreed because he had determined that defendant was a guest rather than a tenant. The deputy waited until he saw defendant leave the victim's residence. He saw no injuries on the victim at the time of this first visit to the mobilehome on December 25, 2012.

Thinking defendant had vacated the mobilehome, the victim went inside to get a jacket. As he walked across the entry between the hallway and the front room, the victim was struck in the head. He testified that it was defendant who struck him, and that the single blow was "very hard." The victim fell to the ground, where defendant "jumped on [him] and [they] wrestled."

Defendant then followed the victim to a neighbors' house, where the neighbors called the police. This second call to the police occurred approximately 10 minutes after officers had left the property. Officers arrived to find the victim had swelling and abrasions on his forehead and another mark on his right cheek. They later located defendant on the same neighboring property as the victim; he was lying on his chest behind a shed.

An ambulance transported the victim to the hospital, where he remained overnight. The victim told doctors that he did not know at that time what had been used to hit him. However, when the victim returned to the mobilehome after his hospital stay, he looked for the item defendant had used in the assault. The victim located a "white board with dowel pins in the end of it" on the floor where he had been hit. The item appeared to be part of a window frame.

The victim told law enforcement about the "stick" he thought defendant used to hit him, but he did not turn it over to investigators until December 31, 2013, which was approximately one year after the Christmas Day incident. According to the victim, the

4

investigating officer to whom he mentioned the stick "forgot" about it. No forensic testing, including testing for fingerprints or DNA, was conducted on the stick.

At trial, the victim testified that he is known as "Big John" because he is quite tall. He admitted that he had probably joked at times about receiving injuries to his head by walking into a doorway. The victim said: "On the top of my head a little bit, the door touches it." The victim also admitted that the mobilehome was "quite dark" dark on the day in question because there was no electricity in the residence at that time.

The victim recognized photographs of himself inside the mobilehome. However, when defense counsel suggested that one of the pictures showed that he had to bend down to avoid hitting a beam inside the mobilehome, the victim stated, "I don't have to bend down, no." Defense counsel next used a photograph of the victim "coming out of the doorway" into a room inside the mobilehome to imply that the injuries depicted in the People's photographs of the victim could have been caused by the victim's bumping his head on the doorway. The victim disagreed that an injury from striking his head on the doorway would be in the same spot as the injuries in the People's pictures of him. He also asserted that he "got hit" four feet away from the doorway.

In relation to the November 24, 2012 incident, the People charged defendant with felony assault with a deadly weapon, namely, a hoe (§ 245, sud. (a)(1)), felony criminal threats (§ 422), and misdemeanor vandalism (§ 594, subd. (a)(2) & (a)(3)). The jury acquitted defendant of the first of these, including a lesser included offense. It convicted defendant on the other two counts.

The December 25, 2012 incidents led to charges of felony burglary (§ 459), felony assault causing great bodily injury (§ 243, subd. (d)), and misdemeanor trespass (§ 602.5, subd. (a)). At the close of evidence, the trial court partially granted defendant's section 1118.1 motion and dismissed the misdemeanor trespass count. The jury acquitted defendant of burglary and a lesser included offense but convicted him of assault causing great bodily injury.

ANALYSIS

Defendant contends the trial court erroneously denied his motion for mistrial because the prosecutor's statements about testimony he could have given to explain why his DNA was on the weapon he allegedly used, had any such evidence been presented, constitute impermissible comments on the fact that he chose not to testify at trial. We disagree and find that the prosecutor's mention of an irrelevant matter as to which defendant might have testified does not constitute *Griffin* error.

In *Griffin*, the United States Supreme Court held that "the Fifth Amendment . . . forbids either comment by the prosecution on the accused's silence or instructions by the court that such silence is evidence of guilt." (*Griffin*, *supra*, 380 U.S. at p. 615, fn. omitted.) In *United States v. Robinson* (1988) 485 U.S. 25, 32, 34, the Court clarified that the *Griffin* rule does not bar any and all prosecutorial comments on a defendant's failure to testify but instead only prohibits the prosecution from attempting to treat a defendant's silence as "substantive evidence of guilt." In so holding, the Court

6

emphasized that statements by prosecutors about a defendant's silence must be examined in the context in which they are made.  (*Id.* at p. 33.)

California courts follow the same approach and consider "whether there is 'a reasonable likelihood that any of the [prosecutor's] comments could have been understood, within its context, to refer to defendant's failure to testify.'  (*People v. Clair* (1992) 2 Cal.4th 629, 663.)"  (*People v. Sanchez* (2014) 228 Cal.App.4th 1517, 1523 (*Sanchez*).)  Generally speaking, a prosecutor may not comment, either directly or indirectly, on the defendant's failure to testify, such that "a prosecutor may commit *Griffin* error if he or she argues to the jury that certain testimony or evidence is uncontradicted when the nontestifying defendant is the only person who can refute the evidence."  (*Id.* at p. 1524; see *People v. Medina* (1995) 11 Cal.4th 694, 755.)  However, nothing in *Griffin* or its progeny prohibits a prosecutor from commenting " 'on the state of the evidence or on the failure of the defense to introduce material evidence or to call logical witnesses.' "  (*People v. Hovey* (1988) 44 Cal.3d 543, 572 (*Hovey*); see *Sanchez*, *supra*, 228 Cal.App.4th at p. 1524 [accord].)

With this background in mind, we now summarize the relevant context of defendant's motion for mistrial.  In the portions of his closing that are most directly relevant to this appeal, defense counsel noted that the victim had retained possession of the wooden stick for a year.  He went so far as to complain:  "All of a sudden a few weeks before trial, a year after the allegations, it pops up."  Defense counsel also

7

emphasized that no forensic testing had been conducted on the stick. He told the jury, "there is no evidence that connects that item to [defendant] whatsoever."

On the topic of the count for assault that arose out of the December 25, 2012 incident, defense counsel began by reminding the jury about CALCRIM 224,[5] which was one of the instructions the trial court had already administered. He then reminded the jury that a conviction would only be warranted if the People "prove[d] beyond a reasonable doubt that any serious bodily injury that was suffered by [the victim] was suffered as a result of [defendant's] action." Next, defense counsel referred to "the testimony and photographs depicting the interior of the residence." He then repeated that the jury need not believe that a conclusion drawn from circumstantial evidence of innocence actually occurred, because an acquittal was required as long as such a conclusion was "reasonable."

In her rebuttal to defense counsel's closing argument, the prosecutor began by asking the jury to focus on the victim rather than the attorneys involved in the case. She

---

[5] This jury instruction reads: "Before you may rely on circumstantial evidence to conclude that a fact necessary to find the defendant guilty has been proved, you must be convinced that the People have proved each fact essential to that conclusion beyond a reasonable doubt.

"Also, before you may rely on circumstantial evidence to find the defendant guilty, you must be convinced that the only reasonable conclusion supported by the circumstantial evidence is that the defendant is guilty. If you can draw two or more reasonable conclusions from the circumstantial evidence, and one of those reasonable conclusions points to innocence and another to guilt, you must accept the one that points to innocence. However, when considering circumstantial evidence, you must accept only reasonable conclusions and reject any that are unreasonable."

reminded the jury that statements by counsel are not evidence[6] and stated, "So let's go get back to the evidence, the real evidence." The prosecutor indicated that trial, like life, is full of "distractions." She also indicated that the case "boil[ed] down to . . . the credibility of the victim." Next, the prosecutor responded to defense counsel's comments about circumstantial evidence by stating that the victim's testimony constituted direct evidence and, in fact, that this testimony was the only evidence about the assault on December 25, 2012. The prosecutor then emphasized that the victim did not pretend to know what defendant used to strike him when he spoke to doctors on the night of the attack, and that the victim found the wooden stick exactly where he had been hit when he returned home from the hospital. Because the pictures at trial showed "two lumps" on the victim's head, the prosecutor asked the jury to infer that the injuries were caused by the stick with "two dowels sticking out."

The prosecutor then opined that, "In almost every case . . . there is always going to be stuff that people want that they didn't get. It's inevitable." She then stated that she did not need to produce "all of the evidence." Finally, the prosecutor remarked: "And

---

[6] Included among the instructions the jury received was CALCRIM 222, which reads, in pertinent part: " 'Evidence' is the sworn testimony of witnesses, the exhibits admitted into evidence, and anything else I told you to consider as evidence.

"Nothing that the attorneys say is evidence. In their opening statements and closing arguments, the attorneys discuss the case, but their remarks are not evidence. Their questions are not evidence. Only the witnesses' answers are evidence. The attorneys' questions are significant only if they helped you to understand the witnesses' answers. Do not assume that something is true just because one of the attorneys asked a question that suggested it was true."

some people like to say why isn't there fingerprints or DNA from there? First of all, why would a DNA match to the defendant on here—what would that mean to you? It would really mean nothing. Because if the defendant had been living at the house and there is his DNA on this, then all he has to say is, yes, my DNA is on there because I lived at the house. So think about that."

Defense counsel immediately objected[7], and the trial court sustained the objection. After reminding the jury that statements of counsel are not evidence, the court began a sidebar discussion with both attorneys. Defense counsel asserted that a "critical *Griffin/Doyle*[8] error" had occurred. The prosecutor responded: "That is not referencing the defendant speaking or anything. That's referencing a totally different subject matter. We're talking about what—about DNA evidence. It's not about what—it's not saying the defendant would have come to testify at trial about that. It's just saying why DNA evidence in this case would be—would not be relevant."

The trial court then asked the prosecutor to whom she was referring in her statement beginning with, "all he has to say is . . ." The prosecutor admitted she meant defendant, but she repeated that she was "explaining about the DNA evidence." The prosecutor then noted that she had just reminded the jury that no one has to produce all of the evidence and that defendant has "absolutely no burden whatsoever." The trial court then expressed an intent to give the jury curative instructions.

---

[7] He did not specify a ground for his objection.

[8] *Doyle v. Ohio* (1976) 426 U.S. 610.

Defense counsel then "officially" made a "motion for a mistrial." The trial court asked for comments from the prosecutor, who said: "I was not referring to him testifying or not testifying, by any means. I was exactly just talking about the DNA, why—why both sides are not required to produce all evidence. I said—for example, because defense counsel had asked [one of the investigating officers], well, you didn't take DNA from this, I'm explaining to the jury why DNA wouldn't matter in this case if the person lives at the house and they found DNA on it. That would be the explanation. I never was referring to the defendant having to get up on the stand in a case—obviously there is no DNA in this case, so why would I be referring to the defendant having to get up and make a statement when I'm using an example that does not include facts from our case?"

The trial court denied defendant's motion for mistrial. It noted that the jury had already been instructed that attorney comments are not evidence and found "that there has been no prejudice to the defendant by this statement." When proceedings before the jury reconvened, the court referenced jury instructions to the effect that a criminal defendant is presumed innocent, that a defendant has the right not to testify, that a decision not to testify cannot be considered for any purpose, and that statements in closing arguments are not evidence. The court told the jury that the evidence before it consisted of "what you gleaned from the witnesses who have been sworn in and testified that you found credible."

The prosecutor resumed her closing argument with: "I'm not required to produce all evidence." She then gave an analogy to a personal experience she had doing jigsaw

puzzles with her grandmother when she was younger. When they discovered that a piece of a puzzle was missing, the prosecutor "would be so upset and devastated, a drama queen, why this happened, you know." Her grandmother would then glue the completed portion of the puzzle to cardboard, hold it up, and ask, "But can you still see what it is?" The anecdote concluded with: "And that's how I look at things. . . . It is what it is. You have the evidence that you have. When you look at the evidence, can you see what—can you see the truth? Can you see what happened with what you have?"

In the small amount of closing argument that remained, the prosecutor told the jury that its decision must be "based upon the evidence." She also "ask[ed the jury] to confirm the evidence because it's important, because it's the law."

Having placed the prosecutor's statement about defendant's testimony in its context, we now consider whether her remark amounts to a *Griffin* error. As a threshold matter, we agree with defendant that the prosecutor was referring to testimony by him when she stated that "all *he* has to say is, yes, my DNA is on there because *I* lived at the house." (Emphasis added.) The only person at trial to whom the phrase, "I lived at the house," could pertain is defendant. The People's contention that the prosecutor was referring to statements defense counsel could have made is therefore both illogical and unsupported by the record.

Still, and as we have explained, not every mention of a decision not to testify is problematic under *Griffin*. In this case, although the prosecutor explicitly mentioned that defendant had not testified to a very specific fact, we find no error because counsel's

12

comment, in the context in which it occurred, was one about the state of the evidence instead of a request that the jury draw inferences about defendant's guilt or innocence.

Defense counsel's closing argument suggested that the jury should discredit the victim's testimony that defendant had used the wooden stick to hit the victim in the head. This was largely because no forensic evidence tied defendant to the stick. However, defense counsel also insinuated that the victim had actually struck his head on a beam or doorway inside the mobilehome, and that he had not given the stick to authorities sooner to hide the fact that he was pretending that a physical attack had occurred when it had not. In this context, the prosecutor's explanation about why the presence of defendant's fingerprints or DNA on the stick would be meaningless was a comment on the state of the evidence.

Moreover, although the prosecutor did explicitly mention a fact about which defendant might have testified, this fact has no significance in terms of defendant's guilt or innocence. The prosecutor added two conditions precedent to her statement about what defendant could have said had he taken the stand: first, she indicated that he needed to live in the residence where the battery occurred, and, second, she stated that his DNA had to be present on the weapon he allegedly used to strike the victim. It is undisputed that the evidence at trial did not satisfy the second condition; because no one had conducted forensic testing on the alleged weapon, there was no evidence that defendant's DNA was present. Since one of the prosecutor's conditions precedent was not met, her conclusion could not follow. In the prosecutor's own words, she did no more than use

"an example that does not include facts from our case" to illustrate why testimony about defendant's DNA would have been irrelevant. For these reasons, the hypothetical set of facts the prosecutor proffered "w[as] not aimed at the exercise of [defendant's] right to remain silent and w[as] not likely to be understood by the jury as reflecting on that right." (*People v. Lewis* (2004) 117 Cal.App.4th 246, 258.)

Moreover, after the trial court denied defendant's motion for mistrial and the prosecutor resumed her rebuttal to defense counsel's closing argument, she immediately focused the jury on the state of the evidence. In particular, her anecdote about a jigsaw puzzle with a missing piece concisely communicated to the jury what she meant when she mentioned defendant's ability to explain away any DNA evidence. Just as the young prosecutor could still see what the picture was even though the puzzle was missing at least one piece, so, she argued, could the jury draw conclusions about the attack on the victim even in the absence of some types of evidence.

Because the prosecutor's statement about defendant's testifying had no bearing on his guilt or innocence and related instead to the state of the evidence, we find that no *Griffin* error occurred. The trial court therefore did not err in denying the motion for mistrial, which was based solely on the premise that the prosecutor had impermissibly commented on defendant's decision not to testify.

14

## DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

RAMIREZ
P. J.

We concur:

McKINSTER
J.

KING
J.