Filed 2/13/15  P. v. Bernal CA2/3

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE, | B247231 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. BA381249) |
| v. | |
| JHONATAN BERNAL, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, William C. Ryan, Judge.  Reversed.

Jonathan E. Demson, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Susan Sullivan Pithey and Mary Sanchez, Deputy Attorneys General, for Plaintiff and Respondent.

Appellant Jhonatan Bernal appeals from the judgment entered following his conviction by jury of voluntary manslaughter (Pen. Code, § 192, subd. (a)). The court sentenced him to prison for three years. We reverse.

## FACTUAL SUMMARY

1. *People's Evidence.*

Viewed in accordance with the usual rules on appeal (*People v. Ochoa* (1993) 6 Cal.4th 1199, 1206), the evidence established that on the night of February 12, 2011, appellant and Ana Chirino, appellant's girlfriend, attended a party at 43rd and Wall in Los Angeles. Jubal Trinidad (the decedent) was there and was drinking.

Appellant and Chirino later decided to leave and they entered Chirino's car; appellant was the driver. Trinidad asked for a ride. Appellant or Chirino consented and Trinidad entered the car. Trinidad told appellant to drive into an alley that intersected 43rd between Main and "Woodlong." (*Sic.*) The alley was behind Trinidad's house. Appellant complied.

Appellant and Trinidad exited and walked towards the back of the car. Minutes later, the two were fighting on the ground. Alex Guevara (Alex) was Trinidad's son. Flora Lara (Lara) was Trinidad's wife, and 12-year-old Danny Guevara (Danny) was Trinidad's grandson. Alex, Lara, and Danny were inside the house when Trinidad began screaming. Alex exited through the front door, Lara exited out the back door that led to the alley, and Danny went towards the alley. Each denied having a knife, but Chirino testified Alex was holding one. The police found a knife on the ground in the alley where the incident occurred.[1] Chirino was scared. Lara pulled appellant off Trinidad. Lara testified she saw a girl, near the car's trunk, say, "Let's go" and "We're going to kill them."

---

[1] Appellant testified he recognized the knife the police found as the one Alex was carrying.

Lara, assisted by Alex, picked up Trinidad off the ground. Appellant entered the car. Chirino told appellant to drive forward, but appellant began backing up and the car hit Trinidad.

Alex and Lara yelled to appellant to stop, but the car's windows were closed. Alex pounded on the driver's side window, telling appellant to stop, but appellant continued driving, dragging Trinidad under the car. Alex and Lara pursued on foot, pounding on the car's windows and trunk. At one point the car became stuck and appellant drove forward and backward over Trinidad three or four times. Appellant drove backwards out the alley, onto 43rd, then onto Main, dragging Trinidad.

Appellant was driving forward on 43rd and Main when Alex pulled off the car's rear license plate and showed it to appellant. Chirino testified Alex told appellant, "Look, stupid, what I got." Appellant then drove backwards and tried to run over Alex, but Lara pushed Alex out of the way. Trinidad was dislodged from the car. Appellant drove away, running over Trinidad. At 2:00 a.m. on February 13, 2011, a police officer saw Trinidad's body at 43rd and Main. Trinidad died as a result of blunt force trauma. Police recovered from the alley a knife, an unopened beer can, an open beer can, and pieces of a broken watch.

About 10 a.m. on February 13, 2011, Chirino falsely reported her car had been stolen. Police arrested her that day. In a statement to police, Chirino wrote, inter alia, the following. A man approached appellant and Chirino at the party, and the man said he was going to call the police. When, later, appellant drove backwards in the car, it felt like he ran over the man.

A detective testified Chirino told him that when appellant and Trinidad were fighting in the alley, appellant was on top of Trinidad punching and kicking him, and an older lady and two young males tried to get appellant off Trinidad. Chirino did not tell detectives she saw anyone with a weapon or knife. Chirino told detectives when appellant began backing up the car, she felt a bump. Chirino yelled at appellant to stop, but he cursed at her, told her to shut up, and continued driving backwards. A detective testified appellant twice fled from police, i.e., once when police came to Chirino's house

3

to arrest appellant a few days after the incident, and once when police later were transporting him between police facilities.

2. *Defense Evidence.*

In defense, appellant testified he killed Trinidad by accident. According to appellant, after he drove into the alley, Trinidad asked appellant for a few dollars so Trinidad could buy more beer. Appellant took out cash from his pocket to give some to Trinidad. Trinidad tried to grab the cash and it fell. As appellant picked up the money, Trinidad struck him with a metal container, possibly a beer can. Appellant put the money in his pocket. Trinidad grabbed appellant's neck and repeatedly tried to reach into appellant's pocket. Trinidad robbed appellant of appellant's watch. Appellant and Trinidad struggled and fell. Trinidad robbed appellant of a gold chain. Appellant told Trinidad to leave appellant alone, but Trinidad replied no and said appellant was not going anywhere.

Appellant and Trinidad were on the ground and appellant was facing 43rd when appellant saw "this guy," whom appellant later identified during his testimony as Alex, holding a knife and running towards appellant. Trinidad was grabbing appellant's pants. Appellant pushed Trinidad to free himself while Alex was running towards appellant. Appellant testified he rose, looked back, and saw a lady and young child "coming out from the apartment building from the fence where [Trinidad was] supposed to [be] going to get in the apartment." Appellant also testified, "[w]hen she came out with the other little kid, and I just told her – I told that little kid, hey, your grandpa's going crazy. I don't know what's wrong with him."

Alex, holding the knife, was still coming after appellant. Appellant testified appellant opened the car door, looked back, and "the older man [Trinidad] who was fighting with me, he was already up with the lady, bringing him already in, and the other guy's still coming after me. He was coming from the street." Appellant entered the car and locked it. Chirino, inside, was screaming, and appellant told her "to come down, just duck in." (*Sic.*) Alex had the knife and was punching on the window. Alex suddenly looked back and appellant thought Alex might pull out a gun. Appellant was afraid. At

4

some point appellant thought Alex might be a gang member because Alex was wearing long shorts and white shoes.

Appellant grabbed the steering wheel, put an arm up to deflect any gunshot, looked back to Alex, and drove backwards to 43rd, then to Main. When appellant was backing out the alley, he was focusing on Alex and was not looking to the rear. Appellant had not tried to hit Trinidad and did not know he had hit Trinidad.

Appellant also testified Alex, Lara, and Danny entered the alley where the fight took place, but neither Lara (who was in her mid-50's) nor Danny was a gang member. Alex, Lara, and Danny were the only people appellant had seen in the alley other than Trinidad and Chirino. Appellant denied having known or met Alex, Lara, or Danny before the night of the incident. Appellant denied telling detectives that when appellant and Trinidad were fighting, appellant saw three gang members coming at appellant. Appellant also denied telling detectives "that they were gang members." Appellant later admitted he "talked about gang members" but testified he had been referring only to Alex. The broken watch belonged to appellant.[2]

3. *Rebuttal Evidence.*

In rebuttal, Los Angeles Police Detective Leonardo McKenzie testified that on February 16, 2011, he interviewed appellant and appellant repeatedly denied knowledge of a party, giving anyone a ride home, or driving the car that night. McKenzie testified appellant later told him as follows. Appellant had been at the party. Trinidad was a "crack head" using drugs at the party. Appellant drove Trinidad into an alley behind Trinidad's home. Trinidad indicated if appellant gave him $10, Trinidad would exit the car. Appellant and Trinidad were later outside the car when Trinidad tried to grab money appellant possessed and the two began fighting. People ran towards appellant and one

---

[2] A few days after the incident, appellant went to Chirino's house. Appellant heard people screaming outside. Appellant, afraid Alex might have come to kill him, fled out the back, but stopped when he realized the people were the police. During appellant's transportation between police facilities, an officer told appellant that appellant was a murderer, he would be beaten in jail, and he would be imprisoned for life. Appellant panicked, escaped, and fled.

5

had a knife.  Appellant, afraid, reentered the car, drove backwards to 43rd, then went south on Main.

McKenzie testified appellant never said Trinidad choked appellant, grabbed a gold chain from appellant's neck, went through appellant's pockets, or struck appellant on the head with an object.  Appellant said gang members were coming at him and trying to attack him.

*ISSUES*

Appellant claims the trial court (1) erroneously failed to instruct on self-defense or defense of others and (2) erroneously refused to modify CALCRIM No. 511 to reflect Alex was a legally adequate source of provocation.

*DISCUSSION*

*The Trial Court Prejudicially Erred by Failing to Instruct on Self-Defense.*

Appellant claims the trial court prejudicially erred by failing to instruct on justifiable self-defense and defense of others (hereafter, self-defense).[3]  We agree.  A trial court has a duty to instruct sua sponte on a defense only where (1) it is supported by substantial evidence and (2) the defendant is relying on the defense or it is not inconsistent with the defendant's defense.  (*People v. Villanueva* (2008) 169 Cal.App.4th 41, 49 (*Villanueva*); *People v. Shelmire* (2005) 130 Cal.App.4th 1044, 1046, 1058-1059.)  "If the defense is supported by the evidence but is inconsistent with

_____

[3]  Appellant arguesTrinidad was robbing appellant and, while appellant was fending off the robbery, Trinidad's family came running towards appellant from several directions and pursued appellant.  Alex, carrying a knife, chased appellant to the car.  After appellant was inside the locked car, "appellant was assailed on one side by his panicked, screaming girlfriend and on the other by the man with the knife, who was yelling and pounding on the car window and possibly reaching for a gun.  In his desperation to get away from his assailants, appellant put his car into reverse and backed out of the alley, backing into the victim in the process."  The court instructed the jury on voluntary manslaughter based on sudden quarrel or heat of passion (not based on imperfect self-defense).  The jury convicted appellant of voluntary manslaughter but found not true an allegation appellant personally used a dangerous or deadly weapon, i.e., an automobile, for purposes of Penal Code section 12022, subdivision (b)(1).

6

the defendant's theory of the case, the trial court should instruct on the defense only if the defendant wishes the court to do so. [Citation.]" (*Villanueva*, at p. 49.)

In *People v. Breverman* (1998) 19 Cal.4th 142 (*Breverman*), our Supreme Court, quoting *People v. Sedeno* (1974) 10 Cal.3d 703, 717, fn. 7 (*Sedeno*), stated, "when the trial court believes 'there is substantial evidence that would support a *defense* inconsistent with that advanced by a defendant, the court should ascertain from the defendant whether he wishes instructions on the alternative theory.' " (*Breverman*, at p. 157.)[4]

Self-defense as a defense to what would otherwise be murder requires that the defendant commit an intentional act causing death; an unintentional act is insufficient. (*Cf. Villanueva*, *supra,* 169 Cal.App.4th at pp. 50-51 [intentional shooting]; *People v. Curtis* (1994) 30 Cal.App.4th 1337, 1359 [self-defense requires "intentional use of deadly force"].) Self-defense also requires that a defendant not only believe the defendant is in imminent danger, but perceive such danger "from the victim."
(*Cf. Villanueva*, at p. 52, fn. 10; see *Sedeno, supra,*10 Cal.3d at p. 718.) The doctrine of self-defense involves various reasonableness requirements.[5]

1. *The Trial Court Erred by Failing to Instruct on Self-Defense.*

Notwithstanding any defense evidence appellant accidentally killed Trinidad, there was nonetheless independent substantial evidence (from the People's case) appellant intentionally struck him and ran over Trinidad with the car, killing him. Moreover, we believe there was substantial evidence (1) appellant reasonably believed Trinidad and

---

[4]    "In assessing the evidence to determine whether to give an instruction, the trial court should not measure the substantiality of the evidence by weighing the credibility of the witnesses. That duty is within the exclusive providence of the jury." (*People v. Russell* (2006) 144 Cal.App.4th 1415, 1430.)

[5]    Appellant concedes CALCRIM No. 505, modified as relevant to this case, sets forth three pertinent elements involving reasonableness: (1) the defendant reasonably believed the defendant or someone else was in imminent danger of being killed or suffering great bodily injury or was in imminent danger of being robbed, (2) the defendant reasonably believed the immediate use of deadly force was necessary to defend against that danger, and (3) the defendant used no more force than reasonably necessary to defendant against that danger.

Alex were acting in concert, (2) appellant reasonably believed he was in imminent danger of being killed or suffering great bodily injury, and/or was in imminent danger of being robbed, and (3) satisfying the reasonableness requirements of self-defense (see fn. 5, *ante*). Appellant did not request a self-defense instruction. Nonetheless, the trial court should have ascertained from appellant whether he wished instructions on self-defense (*Breverman*, *supra,* 19 Cal.4th at p. 157), and the trial court did not do so. We conclude the trial court erred by failing to instruct on self-defense.

2. *The Error Was Prejudicial.*

In *People v. Salas* (2006) 37 Cal.4th 967, 984, our Supreme Court stated it had "not yet determined what test of prejudice applies to the failure to instruct on an affirmative defense." However, in *People v. Watt* (2014) 229 Cal.App.4th 1215 (*Watt*), the court noted the above statement in *Salas* and observed, "we have not found one published opinion that embraces the *Chapman* standard for either the failure to instruct, or, as here, error in the instruction that was given. Rather, published opinions have concluded that the [test in *People v. Watson* (1956) 46 Cal.2d 818 (*Watson*)] applies." (*Watt*, at p. 1219.) To have received a more favorable result per *Watson*, Bernal only had to raise a reasonable doubt as to whether he acted in self-defense.[6] For the reasons discussed below, we conclude the instructional error here was prejudicial under the *Watson* standard.

---

[6] Indeed, in *People v. Sanchez* (2014) 228 Cal.App.4th 1517, the court stated, "Errors under California law are prejudicial when 'it is reasonably [probable] that a result more favorable to the appealing party would have been reached in the absence of the error.' [*Watson, supra,* 46 Cal.2d at p. 836.] It is clear that ' "a 'probability' in this context does not mean more likely than not, but merely a *reasonable chance*, more than an *abstract possibility*." ' [Citation.] Further, the courts' interpretation of a ' "result more favorable" ' has 'no significant distinction' from 'the phrase[] "a different result," ' as '[b]oth standards anticipate that the party seeking relief will be in a different, and necessarily a better, position if relief is granted.' [Citation.] Thus, '[i]t appears that under the *Watson* standard a hung jury is considered a more favorable result than a guilty verdict.' [Citation.]" (*Sanchez*, at pp. 1534-1535.)

As mentioned, there was substantial evidence appellant killed Trinidad in self-defense because appellant reasonably believed Trinidad and the knife-wielding Alex were acting in concert to kill, inflict great bodily injury, and/or rob appellant. The jury convicted appellant of voluntary manslaughter, i.e., a criminal homicide mitigated by provocation from Trinidad. By failing to instruct on self-defense, the court precluded appellant from relying on that defense, and referring to self-defense instructions, during jury argument. Appellant was thus precluded from arguing the killing was not merely mitigated by provocation from Trinidad, but justifiable because of conduct from Trinidad and Alex, acting in concert, i.e., conduct constituting felonious assault, and/or robbery.

According to the People's evidence, Trinidad had been drinking at a party and, according to appellant, Trinidad was a "crack head." Appellant, Chirino, and Trinidad left the party and, shortly thereafter, appellant and Trinidad were fighting in the alley.

Because the court did not instruct on self-defense, appellant was precluded from relying on a self-defense instruction to argue various facts presented by the evidence. Police recovered an unopened beer can and an open beer can. Appellant testified Trinidad hit appellant with a metal container, possibly a beer can. The fact police found beer cans, including an unopened one (which would have been heavier if used as a weapon) was consistent with appellant's testimony. Police also recovered pieces of broken watch. Appellant testified they belonged to him, and the pieces were consistent with his testimony of a struggle between appellant and Trinidad. Further, police recovered a knife at the scene and, as mentioned, Chirino and appellant testified Alex had a knife. The recovered knife was consistent with appellant's testimony he backed away because a knife-wielding Alex, and other persons, were assaulting appellant.

9

Appellant testified he thought Alex was a gang member, once appellant was in the car he thought Alex might pull out a gun, and appellant was afraid. According to appellant, even a few days after the incident when he was at Chirino's house, he was afraid Alex had come to kill him. In sum, we find there was enough evidence in this case for a juror to have had a reasonable doubt whether the prosecution proved appellant did not kill Trinidad in self-defense. Therefore, we conclude the trial court's error in failing to instruct on self-defense was prejudicial.[7]

### DISPOSITION

The judgment is reversed.


**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


KITCHING, J.

We concur:


EDMON, P. J.


ALDRICH, J.

---

[7] In light of the above, there is no need to reach appellant's claim the trial court erroneously refused to modify CALCRIM No. 511 to reflect Alex was a legally adequate source of provocation.

10