Filed 5/18/16  P. v. Dykes CA2/6

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>ADAM CHRISTOPHER DYKES,<br><br>    Defendant and Appellant. | 2d Crim. No. B261576<br>(Super. Ct. No. F478660)<br>(San Luis Obispo County) |

Adam Christopher Dykes appeals his conviction, by jury, of assault with a deadly weapon against a peace officer (Pen. Code, § 245, subd. (c)),[1] and forcibly resisting peace officers.  (§ 69.)  The trial court sentenced appellant to a total term in state prison of 11 years, with 1133 days credit.  He contends the trial court erred when 1) it allowed the prosecution to violate a stipulation describing the circumstances of his arrest, 2) it denied appellant's motion for new trial, and 3) it allowed the prosecutor to commit misconduct in closing argument.  We affirm.

*Facts*

Appellant was on parole and had failed to report to his parole officer.  A warrant was issued for his arrest.  Sheriff deputies from San Luis Obispo arrested appellant during a coordinated "high-risk" traffic stop in a grocery store parking lot.

---

[1] All statutory references are to the Penal Code unless otherwise stated.

Appellant was sitting in the driver's seat of a parked car; his girlfriend was sitting in the front passenger seat. Three marked police vehicles, with lights flashing, and other unmarked vehicles converged on appellant's car. The deputies approached with guns drawn, announced they were deputies and ordered the occupants of the car to show their hands. Some officers went to the driver's side of appellant's car; others went to the passenger side.

Appellant looked in his rearview mirror, toward one of the deputies who described his facial expression as one of "disgust." He raised his hands close to the ceiling of the car but then quickly dropped them and grabbed the steering wheel. One of the deputies got into the car to arrest appellant. A struggle ensued and appellant started the car. He placed it in reverse and the car started to roll. Meanwhile, other officers were piling into the car as it rolled. One deputy got in on the passenger side, grabbed appellant's hand and tried to remove it from the gear shift. Another deputy sustained abrasions on his face and hands during the struggle.

Appellant was eventually removed from the car, handcuffed and taken into custody. One of the deputies commented that appellant could have hurt somebody. Appellant replied that, "he wasn't trying to hurt anybody; he was just trying to get away and he didn't want to go to jail."

The entire episode, captured on tape, lasted about one minute, 18 seconds. During that time, the car was in motion for about two seconds. It rolled only a few feet.

Prior to trial, appellant filed a motion in limine to exclude evidence of his criminal history and to exclude evidence that an informant told law enforcement, before appellant's arrest, that appellant was affiliated with a gang and had a propensity for violence. After lengthy arguments, the parties stipulated: "The defendant Adam Dykes was arrested on August 22, 2012 in San Luis Obispo by deputies of the Sheriff's Department. [¶] The parties hereby stipulate: 1) that at that time, there was a lawful arrest for failure to report to his parole officer; 2) Based on information known to the deputies, the deputies were legally justified in conducting a 'high risk stop' to arrest him."

2

*Evidentiary Issues*

Appellant contends the trial court erred in failing to enforce the stipulation. On several occasions, the prosecuting attorney and law enforcement witnesses referred to the fact that deputies who participated in appellant's arrest were members of the department's "gang task force" or "gang unit." In addition, Deputy Abbas explained the criteria law enforcement would use in determining whether to conduct a "high-risk stop," like the one preceding appellant's arrest. These criteria included, "the subject's criminal history, propensity for violence . . . , whether there is a history of violence with weapons, a history of possession of weapons. If there [are] any known, or believed, threats against peace officers, and their prior history or propensity to flee or evade law enforcement's attempt to apprehend them." Appellant contends this evidence was irrelevant and prejudicial to him because it informed the jurors of the very facts the stipulation was designed to exclude.

Appellant concedes that the prosecuting attorney and law enforcement witnesses used the term "gang task force" at least eight times before he objected. The objection appellant then made was based on Evidence Code § 352, and not on a claim that the prosecution had violated the stipulation. We conclude that not objecting to theoretical violation of the stipulation forfeits appellate review of that issue. (*People v. Partida* (2005) 37 Cal.4th 428, 434-435; *People v. Combs* (2004) 34 Cal.4th 821, 854.)

Had the issue not been forfeited, we would reject it. The erroneous admission of evidence requires reversal only if it is reasonably probable that appellant would have obtained a more favorable result had the evidence been excluded. (*People v. Alcala* (1992) 4 Cal.4th 742, 791; *People v. Aznavoleh* (2012) 210 Cal.App.4th 1181, 1191; *People v. Avitia* (2005) 127 Cal.App.4th 185, 194.) Here, there is no such reasonable probability. Neither the prosecutor nor the law enforcement witnesses called appellant a gang member or stated that he had a history of threatening or violent behavior. There was no expert testimony concerning gang culture or behavior. Instead, the prosecutor and witnesses stated, on a handful of occasions, that officers assigned to a "gang task force" or "gang unit" participated in appellant's arrest. At the same time, there

3

was uncontradicted evidence that appellant violently resisted arrest while causing his car to move in a way that could have injured the arresting officers. There is no reasonable likelihood that appellant would have obtained a more favorable result had the terms "gang task force" and "gang unit" not been uttered.

Appellant also contends the trial court erred when it admitted a statement he made after he was arrested, but before he was advised of his *Miranda* rights. (*Miranda v. Arizona* (1966) 384 U.S. 436.) Within moments of his arrest, one of the deputy sheriffs told appellant that he could have hurt someone by trying to flee. Appellant replied that he was not trying to hurt anybody, he was just trying to get away and didn't want to go to jail. This volunteered statement was not the product of interrogation and was therefore properly admitted into evidence. (*People v. Edwards* (1991) 54 Cal.3d 787, 815 ("[V]olunteered statements not the product of interrogation are admissible.").) There was no error.

*Motion for New Trial*

The theory of the defense at trial was accident: appellant accidentally caused the car to move; he never intended to assault anyone with it. After the jury found him guilty, appellant made a motion for new trial based on the accident defense which the trial court denied. He contends the trial court erred because it failed independently to analyze the evidence.

A new trial may be granted when "the verdict or finding is contrary to law or evidence . . . ." (§ 1181, subd. (6).) In ruling on a motion for new trial, the trial court "independently examines all the evidence to determine whether it is sufficient to prove each required element beyond a reasonable doubt *to the judge*, who sits, in effect, as a '13th juror.' [Citations.] If the court is not convinced that the charges have been proven beyond a reasonable doubt, it may rule that the jury's verdict is 'contrary to [the] . . . evidence.'" (*Porter v. Superior Court* (2009) 47 Cal.4th 125, 133.) The trial court has broad discretion in ruling on a motion for new trial and we will not disturb its ruling unless the trial court has manifestly and unmistakably abused that discretion. (*People v. Thompson* (2010) 49 Cal.4th 79, 140.)

Here, the record discloses that the trial court gave thoughtful consideration to appellant's motion for new trial, summarizing the evidence in detail and explaining its rationale. For example, the trial court noted that the video recording of the arrest made it "clear . . . to me anyway, that [appellant] was struggling during the course of that." The trial court acknowledged that Detective Harvey, the first officer to approach appellant's car, "did everybody at that crime scene that day a large disservice . . . [,]" because his badge was not visible, he was wearing plain clothes, and he had driven an unmarked car to the scene. But the trial court also concluded that, by the time the struggle began, appellant must have known the people approaching his car were police officers. It was "broad daylight" when the first marked unit arrived at the scene. "You can actually see the blue and red lights flashing off the side of . . . the car [appellant] was in. And that [appellant] turned to the right, looked over his shoulder so that would have been in the direction of that marked patrol unit that had its lights flashing at that time." Consequently, the trial court reasoned, appellant "had a duty to comply with [the deputies'] instructions. He chose not to do that."

The trial court also explained its decision to reject appellant's accident defense. "[Y]our own expert testified, that the only way that car could have been started . . . is if somebody hit their foot on the brake, turned the ignition key, and then to move the car from park into reverse and depress the button on top of the gear shift. There's no way that any of those things could have been accomplished [accidentally], [save] for perhaps the pushing of the brake and maybe the turning. But the evidence was [appellant] started the car, turned the ignition key and the car was placed in reverse and then rolled backwards." The court further stated that it felt there was "more than sufficient evidence for the jury to convict and to have that conviction sustained on appeal."

These comments demonstrate the trial court independently assessed the evidence and did not abdicate its responsibility to act as the "13th juror" when it denied appellant's motion for new trial. (*Porter v. Superior Court, supra*, 47 Cal.4th at p. 133.) *People v. Carter* (2014) 227 Cal.App.4th 322, does not mandate a different result. There, the trial court denied a motion for new trial even though it had a reasonable doubt

5

whether the defendant had committed the crime. We held the defendant was entitled to a new trial because the trial court misunderstood its authority to grant a new trial where it "is not convinced that the charges have been proved beyond a reasonable doubt . . . ." (*Id.*, at p. 327.) Here, the trial court never expressed a reasonable doubt as to appellant's guilt. Because it concluded the evidence against appellant was "very strong" and "more than sufficient" to support the judgment, the trial court did not abuse its discretion in denying the motion for new trial.

*Prosecutorial Misconduct*

Finally, appellant contends the prosecuting attorney committed misconduct in his closing argument when he urged jurors "not to let the defendant get away with this, not to let the defendant pull one over on you with this behavior, not to let the defendant refocus your attention . . . from the major facts which [are] that the defendant knew these were police officers . . . ." Appellant's trial counsel objected to this statement without specifying any grounds for the objection. The trial court overruled it. Appellant contends the statement amounts to misconduct because it was intended to imply that a juror who doubted appellant's guilt would be gullible or naïve. (See *People v. Sanchez* (2014) 228 Cal.App.4th 1517, 1529-1530.)

The issue has been forfeited because appellant did not specify misconduct as the ground for his objection. (*People v. Montes* (2014) 58 Cal.4th 809, 844; *People v. Gionis* (1995) 9 Cal.4th 1196, 1215.) In any event, the prosecutor's comment was not misconduct. The prosecutor is entitled to make fair comment on the evidence and to critique the defense, so long as he or she does not use "deceptive or reprehensible methods to persuade the jury . . . ." (*People v. Parson* (2008) 44 Cal.4th 332, 359; *People v. Lewis* (1990) 50 Cal.3d 262, 283.) "An argument which does no more than point out that the defense is attempting to confuse the issues and urges the jury to focus on what the prosecution believes is the relevant evidence is not improper." (*People v. Cummings* (1993) 4 Cal.4th 1233, 1302, fn. 47.)

In contrast to the closing argument at issue in *People v. Sanchez, supra*, the comment here could not have been insulting or offensive to a juror who doubted

6

appellant's guilt.  The prosecutor was urging jurors to focus on the evidence and reject appellant's accident theory, not insulting the intelligence or common sense of a potential holdout juror.  (See *People v. Huggins* (2006) 38 Cal.4th 175, 207-208.)  There was no misconduct.

*Conclusion*

The judgment is affirmed.

NOT TO BE PUBLISHED.


YEGAN, J.


We concur:


GILBERT, P. J.


PERREN, J.


7

Richard M. Curtis, Retired Judge

Superior Court County of San Luis Obispo

_____

Will Tomlinson, under appointment by the Court of Appeals, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Stacy S. Schwartz, David F. Glassman, Deputy Attorneys General, for Plaintiff and Respondent.