Filed 1/21/21  P. v. Zevallos CA1/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>ADAIR JERU ENRIQUEZ ZEVALLOS,<br><br>    Defendant and Appellant. | A156332<br><br>(San Mateo County<br>Super. Ct. No. 16SF014091) |

Defendant Adair Jeru Enriquez Zevallos was convicted by jury of murder (Pen. Code, § 187, subd. (a)[1]) and assault on a child causing death (§ 273ab, subd. (a)).  It was further alleged, and the trial court found, defendant was ineligible for probation because he personally inflicted great bodily injury (§ 1203.075, subd. (a)).  He raises two issues on appeal—that the prosecutor committed "*Griffin*"[2] error during closing argument, and the trial court committed "*Dueñas*"[3] error in imposing fines and fees without determining defendant's ability to pay.  We affirm.

---

[1]  All further statutory references are to the Penal Code unless otherwise designated.

[2]  *Griffin v. California* (1965) 380 U.S. 609 (*Griffin*).

[3]  *People v. Dueñas* (2019) 30 Cal.App.5th 1157 (*Dueñas*).

1

## DISCUSSION[4]

### *"Griffin" Error*

The rule established in *Griffin*, *supra*, 380 U.S. 609, prohibits a prosecutor from commenting upon a defendant's failure to testify. (*People v. Thomas* (2012) 54 Cal.4th 908, 945 (*Thomas*).) A prosecutor indirectly violates the rule " 'if he or she argues to the jury that certain testimony or evidence is uncontradicted, [and] if such contradiction or denial could be provided *only* by the defendant. . . .' " (*Ibid.*) Similarly, under the *Griffin* rule, a prosecutor "cannot refer to the absence of evidence that *only* the defendant's testimony could provide." (*People v. Brady* (2010) 50 Cal.4th 547, 565–566, italics added.)

However, the rule does not otherwise forbid comment on the absence of defense evidence. (See *People v. Taylor* (2010) 48 Cal.4th 574, 632–633 [no *Griffin* error in prosecutor's comments on defendant's failure to call any witnesses, such as a hypothetical friend or neighbor, to provide nonfelonious reason for defendant's entry into victim's home]; *Thomas*, *supra*, 54 Cal.4th at p. 945 [no *Griffin* error in prosecutor's comments on absence of alibi evidence "framed in terms of the failure to call some person *other than defendant*"]; *People v. Sanchez* (2014) 228 Cal.App.4th 1517, 1526–1527 (*Sanchez*) [no *Griffin* error in prosecutor's comments emphasizing defense's failure to explain defendant's presence at crime scene, where other logical witness could have testified on the subject].)

Defendant complains about the following portion of the prosecutor's closing argument:

"So let's talk about the evidence that we've got. I want to

---

[4] We address the pertinent facts and procedural history in connection with our discussion of the issues raised on appeal.

start with what Dr. Tayama [the People's child abuse expert] would characterize as the history. What she told us is that in the course of her job duties, she is making evaluations about whether a child is suffering from child abuse. One of the many things she considered and one of the things I'm asking you to consider, although I want you to consider every single thing in this case and totality of the circumstances, is the history that we know regarding what happened to Leia. And it's not much.

"Here is a quote, and this is verbatim from the 911 call of what the defendant told the dispatcher in the 911 call. Quote, 'Okay. So I just got finished feeding my daughter food and I made her go to the bathroom and she went No. 2. And then she got off the toilet, laid down on the bed, and she turned really, really pale. She is unresponsive, very faint, breathing, and she looks like she is in pain. And she is like very, very—like she is lethargic. She is floppy and'—and then a word that we couldn't make out. That's it. That's the history from the 911 call.

"There is no explanation as to anything that might have caused the trauma or the bruising that we see on Leia's body. So what else do we know that he said that day? So the paramedics, again, no indication of any trauma. This vague sort of I put her down and then she was having all these weird symptoms.

"Does that seem strange that the people who are treating this girl who is obviously in severe medical distress, that there is a complete absence to the treating doctors or paramedics of what may have caused this so that they can actually treat her? And what we call that is a consciousness of guilt. That he is telling the 911 dispatcher and the paramedics only a part of the story because there must have been something significantly more based on the trauma to her body.

"What did he tell [the child's mother]? What did he tell the mother of Leia? 'I don't know what happened.' She said he made reference to some possible choking that he thought he heard the paramedics maybe say. Of course, we heard from

3

Dr. Rogers [(the pathologist who performed the autopsy)] there is no evidence of anything choking related that caused her death or caused any of her injuries. He just repeatedly said 'I don't know.'

"And that's it. That is the history as given to the 911 call taker, as given to the treating paramedics who were on scene desperately trying to save her life and as told to the mother who wanted to know what in the world happened to my daughter that she died? When I left, she was perfectly fine with no medical symptoms whatsoever.

"And this is what Dr. Tayama was talking about when considering the history and the absence of a history that might explain the injuries, the absence of, well, this child was in a fall or got hit with something or struck with something or was in a car accident or whatever the history might be to explain it, the absence of that or the inconsistency of the story presented is one of the factors that she considers in making a determination as to whether or not this is a case of child abuse. And that's exactly what we have here is there is the absence in these three statements to explain any type of potential trauma of the type that we saw on Leia's body."

Defendant maintains the prosecutor was effectively urging the jury to infer guilt based on his failure to testify and provide an explanation for the child victim's condition. Specifically, defendant maintains the prosecutor was chastising him for not introducing "direct[]" evidence that proved his actions at the time, which he claims could come only through "his own testimony."

The Attorney General asserts defendant forfeited any claim of error because he failed to object to the prosecutor's argument. It is well-established that a claim of *Griffin* error is forfeited in the absence of a timely objection. (See *People v. Valdez* (2004) 32 Cal.4th 73, 127; *People v. Brown* (2003) 31 Cal.4th 518, 554.)

4

Defendant claims he did not forfeit the issue because any objection would have been futile, pointing out that one of the issues he raised in a new trial motion was the prosecutor's alleged *Griffin* error. He cites no authority, however, for the proposition that belatedly raising the issue is sufficient to preserve the issue on appeal. (See *People v. Bonilla* (2007) 41 Cal.4th 313, 336 ["We have never expanded the futility exception to encompass a situation where, as here, the defendant made a belated objection after forgoing multiple earlier opportunities to object, and we decline to do so here"].)

We therefore conclude defendant forfeited the issue. Anticipating this, defendant urges us to consider his *Griffin* error claim as one of ineffective assistance of counsel.

" ' "In order to establish a claim of ineffective assistance of counsel, defendant bears the burden of demonstrating, first, that counsel's performance was deficient because it 'fell below an objective standard of reasonableness [¶] . . . under prevailing professional norms.' [Citations.] Unless a defendant establishes the contrary, we shall presume that 'counsel's performance fell within the wide range of professional competence and that counsel's actions and inactions can be explained as a matter of sound trial strategy.' [Citation.] If the record 'sheds no light on why counsel acted or failed to act in the manner challenged,' an appellate claim of ineffective assistance of counsel must be rejected 'unless counsel was asked for an explanation and failed to provide one, or unless there simply could be no satisfactory explanation.' [Citations.] If a defendant meets the burden of establishing that counsel's performance was deficient, he or she also must show that counsel's deficiencies resulted in prejudice, that is, a 'reasonable probability that, but for counsel's unprofessional errors, the result of the

5

proceeding would have been different.' " ' " (*People v. Henderson* (2020) 46 Cal.App.5th 533, 549 (*Henderson*).)

The record does not disclose why defense counsel remained silent, and there certainly is a "plausible tactical reason" for the absence of an objection—namely, "counsel could have decided to refrain from objecting to avoid drawing the jury's attention to arguments detrimental to the defense case. (See, e.g., *People v. Harris* (2008) 43 Cal.4th 1269, 1290. . . .) The decision whether to object to an argument is an inherently tactical one that is not ordinarily reviewable on appeal. (*Harris*, at p. 1290. . . .) And usually, ' "where counsel's trial tactics or strategic reasons for challenged decisions do not appear on the record, we will not find ineffective assistance of counsel on appeal unless there could be no conceivable reason for counsel's acts or omissions." ' (*People v. Nguyen* (2015) 61 Cal.4th 1015, 1051. . . .)" (*Henderson, supra,* 46 Cal.App.5th at p. 549.) There is nothing in the record before us to suggest we should reach a contrary conclusion here.

Indeed, there was no cause for an objection because no *Griffin* error occurred. The prosecutor made no express reference to defendant's failure to testify, nor did she allude to any exculpatory evidence explaining the cause of the child's death that *only* defendant, himself, could have supplied. Rather, the challenged passage is from that part of the prosecutor's argument urging that this was not a case of criminal negligence, but of implied malice—if "this is actually conscious disregard [of human life] when you consider the location of all the injuries, the number of all of the injuries, all of the evidence in this case." The prosecutor then reviewed, in painstaking detail, all the evidence in the case, from store video that morning showing the child toddling after defendant, to the text to the mother around noontime expressing great frustration with the child, to the Facetime call to the mother less than 30

6

minutes later telling her something was wrong with the child, to the defendant's 911 call (which mother had told him to make), to the testimony of the paramedics, and the graphic testimony of the pathologist and photos of the extensive, brutal injuries suffered by the child. All of the evidence, argued the prosecutor, established far more than reasonable provocation and showed conscious disregard of "human life of a human who stands three feet tall and weighs 30 pounds." In short, in the challenged portion of the argument, the prosecutor was focusing on what defendant *said at the time*, and why that evidence, along with all the other evidence, was important in terms of whether it was a case of manslaughter or murder. This was commentary on the evidence, not *Griffin* error. (See *Sanchez, supra,* 228 Cal.App.4th at pp. 1526–1527.)

In fact, the prosecutor readily acknowledged the evidence did not show "exactly what" defendant did to the victim. What was critical, however, said the prosecutor, was that both the pathologist and the child abuse expert testified "your pancreas does not spontaneously split in half. That does not happen absent blunt force trauma," and the evidence established that trauma of that sort, regardless of its exact nature, occurred shortly before defendant called 911. The prosecutor continued, "We know her pancreas was not split in half in the hour before he called 911, and we know her bowel did not become detached from her mesentery and she did not go into cardiac arrest spontaneously. Some act caused those things to happen, and we may not be able to pinpoint exactly what that act was, but that doesn't matter as long as you believe for purposes of these instructions that the defendant did some act that caused those injuries. That is the critical inquiry in a case like this."

Furthermore, even had an objection been warranted, any supposed error was not prejudicial. The complained-of comments were a fraction of the

7

prosecutor's argument. The jury was instructed on defendant's right not to testify (CALCRIM No. 355) and we must presume the jury followed the instructions given. (*People v. Bennett* (2009) 45 Cal.4th 577, 596.) And there was overwhelming evidence supporting the convictions. The child was in defendant's care at the time, and around lunchtime, he texted the mother expressing great frustration with the child. Less than 30 minutes later, defendant Facetimed mother saying "something" was wrong with the child; mother told him to call 911. When paramedics arrived, the child was in critical condition, and continued to deteriorate. At the hospital, the child was declared dead. The autopsy revealed extensive bruising on her face, neck, head, left hand and forearm, both legs, chest, abdomen, and back. The pathologist believed most of the bruising was inflicted within three days of her death, and perhaps within minutes of it. In addition, her small bowel mesentery was damaged, and her pancreas had been "broken in two." He testified the cause of death was "blunt injuries to the abdomen." In short, any error was harmless beyond a reasonable doubt. (See *Chapman v. California* (1967) 386 U.S. 18, 24.)

**"Dueñas"** *Error*

The court imposed a $60 court facilities assessment (Gov. Code, § 70373), an $80 court operations assessment (§ 1465.8), and a $10,000 restitution fine (§ 1202.4). Citing *Dueñas, supra*, 30 Cal.App.5th 1157, defendant claims the trial court violated his constitutional rights by imposing the assessments and restitution fine without holding a hearing on his ability to pay.

In *Dueñas*, the defendant was a chronically-ill, unemployed homeless woman with cerebral palsy and a limited education who supported her two children through public aid. (*Dueñas, supra*, 30 Cal.App.5th at pp. 1160–

8

1161.) She had lost her driver's license because of her inability to pay her juvenile citations and then had acquired three misdemeanor convictions for driving without a license because the accumulating fines and fees prevented her from clearing the citations and recovering her license. (*Id.* at p. 1161.) She experienced a series of "cascading consequences" due to "a series of criminal proceedings driven by, and contributing to, [her] poverty," and she had already been ordered to pay the charges by the end of her probation period. (*Id.* at pp. 1160, 1163–1164.) The Court of Appeal reversed the challenged assessments, holding "the assessment provisions of Government Code section 70373 and Penal Code section 1465.8, if imposed without a determination that the defendant is able to pay, are . . . fundamentally unfair [and] imposing these assessments upon indigent defendants without a determination that they have the present ability to pay violates due process. . . ." (*Dueñas,* at p. 1168.) It also ordered the trial court to stay the restitution fine "unless and until the People prove that [the defendant] has the present ability to pay it." (*Id.* at pp. 1172–1173.)

The Attorney General maintains defendant also forfeited his "*Dueñas*" challenge since he failed to object on ability to pay grounds in the trial court. Defendant claims his failure to object should be excused (a) because imposition of the assessments and fine without first determining his ability to pay constitutes legal, indeed constitutional, error, which is correctible despite his failure to preserve the issue on appeal, and (b) *Dueñas* represented a "dramatic" and "unforeseen" change in the law and any objection would have been futile.

Since the briefing was completed in this case, the majority of appellate courts have distinguished or disagreed with *Dueñas*, and the Supreme Court has granted review to consider its analysis. (*People v. Kopp* (2019)

9

38 Cal.App.5th 47, review granted Nov. 13, 2019, S257844.) However, we need not weigh in on the merits of *Dueñas's* analysis.

In cases where the trial court imposes a restitution fine exceeding the statutory minimum and the defendant voices no objection on ability to pay grounds, as was the case here, the courts have concluded the defendant has forfeited any complaint that the trial court failed to hold an ability to pay hearing.

Section 1202.4 requires the imposition of a restitution fine upon conviction of a crime, unless the court "finds compelling and extraordinary reasons for not doing so." (§ 1202.4, subd. (b).) The minimum restitution fine for felony convictions is $300, and the maximum fine is $10,000. (*Id.*, subd. (b)(1).) The statute expressly provides that "[a] defendant's inability to pay shall not be considered a compelling and extraordinary reason not to impose a restitution fine." (*Id.*, subd. (c).) However, "[i]nability to pay may be considered . . . in increasing the amount of the restitution fine in excess of the minimum fine pursuant to paragraph (1) of subdivision (b)." (*Ibid.*) The burden of demonstrating such inability to pay lies with the defendant. (*Id.*, subd. (d).)

Defendant concedes he did not object to imposition of the maximum restitution fine. Such an objection clearly would not have been futile as trial courts are statutorily authorized to consider a defendant's inability to pay any restitution fine above the statutory minimum. (§ 1202.4, subds. (c) & (d).)

We therefore conclude defendant forfeited any *Dueñas* challenge not only to the restitution fine, but also to the other minimal assessments imposed by the court. (See *People v. Smith* (2020) 46 Cal.App.5th 375, 395; *People v. Gutierrez* (2019) 35 Cal.App.5th 1027, 1033 ["As a practical matter,

10

if Gutierrez chose not to object to a $10,000 restitution fine based on an inability to pay, he surely would not complain on similar grounds regarding an additional $1,300 in fees."  The court also noted that "even before *Dueñas* a defendant had every incentive to object to imposition of a maximum restitution fine based on inability to pay. . . ."]; *People v. Frandsen* (2019) 33 Cal.App.5th 1126, 1154 ["Given his failure to object to a $10,000 restitution fine based on inability to pay, Frandsen has not shown a basis to vacate assessments totaling $120 for inability to pay."].)

Finally, even if defendant had objected on failure to pay grounds and even assuming *Dueñas's* analysis is sound and applicable, the record demonstrates any supposed error in failing to hold an ability to pay hearing was harmless beyond a reasonable doubt.  (See *People v. Aviles* (2019) 39 Cal.App.5th 1055, 1075–1077 [rejecting *Dueñas* claim where, although no ability to pay hearing was held, record showed any error was harmless].)  Defendant was sentenced to a prison term of 25 years to life.  Nothing in the record indicates he will be ineligible for or unable to perform prison work assignments.  Prior to the offenses, defendant worked in retail, restaurant/bar service, and the automotive repair trade.  His health at the time of sentencing was good.  One can therefore reasonably infer that over the course of more than two decades in prison and thereafter, he will earn an amount sufficient to pay the fees and fines.  (See *People v. Johnson* (2019) 35 Cal.App.5th 134, 139–140 [concluding any *Dueñas* error was harmless given long prison term and no evidence of inability to work].)

## DISPOSITION

The judgment is AFFIRMED.

11

 

                                  _____

                                  Banke, J.

We concur:

_____

Humes, P.J.

_____

Margulies, J.

A156332, People v. Zevallos

12